STATE of Ohio ex rel. O'SHEA & ASSOCIATES COMPANY, L.P.A.

v.

CUYAHOGA METROPOLITAN HOUSING AUTHORITY.

[Cite as *O'Shea & Assocs. Co., L.P.A. v. Cuyahoga Metro. Hous. Auth.,* 190 Ohio App.3d 218, 2010-Ohio-3416.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 93275.

Decided July 20, 2010.

220

O'Shea & Associates Co., L.P.A., and Michael J. O'Shea, for relator.

Weston Hurd, L.L.P., Shawn W. Maestle, and Hilary S. Taylor, for respondent.

MARY EILEEN KILBANE, Judge.

{¶ 1} Relator, O'Shea & Associates Company, L.P.A. ("O'Shea"), made a written public-records request to respondent, Cuyahoga Metropolitan Housing Authority ("CMHA"), under R.C. 149.43. The request stated:

I hereby request the following information:

1. Copies of all liability insurance contracts which cover any and all premises liability issues for the last 20 years for any and all buildings owned or operated by CMHA;

2. Copies of all minutes of all meetings (for the last 10 years) wherein liability insurance and/or the process, methods and sources of paying legal claims for personal injury claims against CMHA are either discussed or decided; and

3. Copies of all documents which document any and all instances of lead poisoning in the last 15 years in any dwelling owned or operated by CMHA.

{¶ 2} In journal entries and opinions dated January 11, 2010, and May 25, 2010, this court considered the various arguments of the parties and determined the merits of O'Shea's claim for relief in mandamus to compel release of the records. In the May 25 opinion, we also granted O'Shea leave to file a motion for attorney fees.

{¶ 3} This journal entry and opinion repeats the analysis and holdings of the January 11 opinion and the May 25 opinion as well as holding that relator is entitled to all of the attorney fees requested. The court is releasing this composite journal entry and opinion now because the prior opinions were not final orders and were therefore not sent to the Supreme Court of Ohio and other electronic services. Also, this journal entry and opinion determines the sole, remaining claim in this action—O'Shea's request for attorney fees.

{¶ 4} Initially, CMHA filed a motion to dismiss the complaint. In the January 11 opinion we did the following:

A. With respect to item 1, we sua sponte converted the motion to dismiss to a motion for summary judgment and granted the parties leave to supple-

ment their filings with evidentiary material as required by Civ.R. 56. See also Civ.R. 12(B).

B. We granted the motion to dismiss with respect to item 2 in O'Shea's request.

C. With respect to item 3, we denied the motion to dismiss, granted relator leave to file a dispositive motion and permitted respondent to file a response.

*Item 1*

{¶ 5} In item 1, relator requested insurance policies. In the complaint, relator avers: "Respondent will not produce all of the insurance policies for the period 2006 through the present date as requested in item number 1 of the Request * * *." Yet attached to the complaint is correspondence from respondent's counsel stating: "I enclose a CD which contains a complete response to your request paragraphs 1 and 2." In its motion to dismiss, counsel for CMHA states: "With respect to the insurance policies requested from 2006 through the present, each and every single one of those documents was provided and therefore that request is moot."

{¶ 6} In its brief in opposition to the motion to dismiss, O'Shea does not directly acknowledge or dispute CMHA's statement that it had provided all of the insurance policies to O'Shea. O'Shea does argue, however, that CMHA impermissibly presented facts in its motion to dismiss that were not in the pleading.

*Item 2*

{¶ 7} In the motion to dismiss, CMHA argues that in items 2 and 3 above, O'Shea is requesting information rather than records. With respect to item 2 (meeting minutes), we agree.

{¶ 8} The express language of item 2 clearly requests records containing certain information—personal-injury claims. "Relator has not cited any authority under which this court could—pursuant to R.C. 149.43—compel a governmental unit to do research or to identify records containing selected information. That is, relator has not established that a governmental unit has the clear legal duty to seek out and retrieve those records which would contain the information of interest to the requester. Cf. *State ex rel. Cartmell v. Dorrian* (1984), 11 Ohio St.3d 177, 179[, 11 OBR 491], 464 N.E.2d 556. Rather, it is the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue." *State ex rel. Fant v. Tober* (May 20, 1993), Cuyahoga App. No. 63757, 1993 WL 173743, at *1, affirmed (1993), 68 Ohio St.3d 117, 623 N.E.2d 1202. See also *State ex rel. Bardwell v. Cleveland State Univ.,*

Cuyahoga App. No. 91077, 2008-Ohio-2819, 2008 WL 2350884, at ¶ 12, citing *State ex rel. Thomas v. Ohio State Univ.* (1994), 70 Ohio St.3d 1438, 638 N.E.2d 1041.

{¶ 9} Respondent highlights the distinction between requesting records and requesting information: "Indeed, if [relator] simply wants all of CMHA's Board Minutes for the last ten years, it may request same which would be provided." Respondent's Reply to Brief in Opposition to Motion to Dismiss. In item 2, O'Shea has not merely requested records. He has attempted to place the responsibility for reviewing records for specific information on a public office.

{¶ 10} In *State ex rel. Dillery v. Icsman* (2001), 92 Ohio St.3d 312, 750 N.E.2d 156, the relator requested that the Sandusky police chief "provide copies of 'any and all records generated, in the possession of your department, containing any reference whatsoever to Kelly Dillery.'" The Supreme Court held that this request was overbroad. "Because Dillery did not specify in her first request that she wanted access only to offense and incident reports, she failed in her duty to identify the records she wanted with sufficient clarity." Id. at 314, 750 N.E.2d 156.

{¶ 11} In light of the well-established authority prohibiting the use of a request for public records to require a public office or person responsible for public records "to search for records containing selected information," *Thomas,* 70 Ohio St.3d 1438, 638 N.E.2d 1041, as well as the authority that prohibits overbroad requests, we must hold that relief in mandamus is not appropriate with respect to item 2 of O'Shea's request.

*Item 3*

■ {¶ 12} In item 3, O'Shea requested "documents which document any and all instances of lead poisoning in the last 15 years in any dwelling owned or operated by CMHA.". CMHA argues that item 3 also is an impermissible request for information and not a request for records. We disagree.

■ {¶ 13} A request for records "must be considered in the context of the circumstances surrounding it." *State ex rel. Morgan v. New Lexington,* 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 33. In *Morgan,* the relator sought "to compel a city to provide access to certain records related to an employee's discharge from employment." Id. at ¶ 1. The Supreme Court in *Morgan* extensively reviewed the circumstances and concluded that although Morgan's request "might be construed to broadly request that the records custodian for New Lexington search existing records to find records that meet certain criteria," id. at ¶ 31, other considerations required the conclusion that Morgan's request was sufficiently specific to require relief in mandamus. See id. at ¶ 28–40.

{¶ 14} In this case, however, the only dispositive motion before this court is respondent's motion to dismiss. Although we hold that O'Shea's request in item

3 is not on its face a request for information, the record in this action is not sufficiently developed for this court to determine whether to grant or deny relief with respect to item 3. As a consequence, we grant O'Shea leave to file a dispositive motion with respect to item 3 only, and CMHA is granted leave to respond.

*Judgment in the January 11 Opinion*

{¶ 15} Initially, CMHA filed a motion to dismiss and O'Shea did not file a dispositive motion. In the January 11 opinion, this court held, in light of the procedural posture of the case:

{¶ 16} "1. With respect to item 1 (liability insurance contracts), we sua sponte convert the motion to dismiss to a motion for summary judgment;

{¶ 17} "A. With respect to item 1, we grant the parties leave to supplement their filings with briefs and evidentiary material as required by Civ.R. 56 (see also Civ.R. 12(B)) including: (i). Filing an inventory listing which (if any) insurance policies covering 2006 through March 26, 2009 (the date of O'Shea's request) CMHA provided to O'Shea; (ii). Filing an inventory listing which (if any) insurance policies covering 2006 through March 26, 2009 (the date of O'Shea's request) CMHA *has not* provided to O'Shea.

{¶ 18} "B. With respect to item 1, CMHA's supplement to the converted motion for summary judgment is due ten days after the date of this entry. O'Shea's supplement and response to CMHA's supplement is due ten days after the filing of CMHA's supplement.

{¶ 19} "2. With respect to item 2 (meeting minutes), we grant the motion to dismiss; and

{¶ 20} "3. With respect to item 3 (documents pertaining to lead poisoning), we deny the motion to dismiss and we grant O'Shea leave to file a dispositive motion with respect to item 3 only within twenty days of the date of this entry and CMHA is granted leave to respond within twenty days of the filing of O'Shea's dispositive motion." (Emphasis sic.) *State ex rel. O'Shea & Assoc. Co., L.P.A. v. Cuyahoga Metro. Hous. Auth.* (Jan. 11, 2010), Cuyahoga App. No. 93275, at 6–7.

{¶ 21} In the May 25 opinion, this court considered:

A. respondent's motion for summary judgment (as converted from the motion to dismiss and supplemented in accordance with the January 11 opinion); and

B. "Relator's Motion for Summary Judgment on the Issue of the Lack of Any Production of Lead Poisoning Documents" ("Relator's motion for summary judgment").

{¶ 22} For the reasons stated below, we did the following:

A. We denied respondent's motion for summary judgment and ordered CMHA to provide O'Shea with copies of all liability insurance policies covering 2006 through March 26, 2009 (the date of O'Shea's request).

B. We granted relator's motion for summary judgment and ordered CMHA to provide to O'Shea "[c]opies of all documents which document any and all instances of lead poisoning in the last 15 years in any dwelling owned or operated by CMHA,"[1] including—but not limited to—copies of each "CMHA EBL Resident Questionnaire" ("Questionnaire") and "CMHA Authorization for Release of Medical Information" ("Release"). CMHA shall, however, redact any social security numbers.

*Item 1*

{¶ 23} In item 1, relator requested insurance policies. In this court's January 11 opinion, we noted the discrepancy between O'Shea's averments in the complaint that CMHA had not provided copies of the liability insurance policies covering 2006 through March 26, 2009 (the date of O'Shea's request), and a letter from counsel for CMHA indicating that the records were provided. In order to resolve this discrepancy and place this action in a procedural posture for this court to make a determination on O'Shea's request for liability insurance contracts, we (1) converted CMHA's motion to dismiss to a motion for summary judgment and (2) granted the parties leave to supplement their filings with briefs and evidentiary material as required by Civ.R. 56 (see also Civ.R. 12(B)), including an inventory of the insurance policies that had or had not been provided to O'Shea.

{¶ 24} In response, CMHA submitted an affidavit of counsel, Hilary S. Taylor, stating:

1. He had stated in a letter dated April 10, 2009, that the policies for 2006 through 2009 were available at the CMHA offices; and

2. He sent a letter dated April 24, 2009, "indicating that everything had been provided to relator."

Affidavit of Hilary S. Taylor, at ¶ 3.

{¶ 25} Counsel's affidavit does not, however, aver that CMHA actually provided O'Shea with copies of all liability insurance policies covering 2006 through March 26, 2009 (the date of O'Shea's request). As a consequence, CMHA has failed to meet its burden of demonstrating that it has made public records available upon request. Accordingly, we deny CMHA's converted motion for

---

1. See O'Shea's March 26, 2009 request for records, quoted above.

summary judgment and order CMHA to provide O'Shea with copies of all liability insurance policies covering 2006 through March 26, 2009.

*Item 3*

{¶ 26} In item 3, O'Shea requested "documents which document any and all instances of lead poisoning in the last 15 years in any dwelling owned or operated by CMHA." O'Shea has filed a motion for summary judgment seeking release of all records requested in item 3. In its brief in opposition to O'Shea's motion for summary judgment ("CMHA brief in opposition"), CMHA argues that item 3 is a request for information and, therefore, not a proper request for public records. We have already held that "the language of O'Shea's request in item 3 is not on its face a request for information." January 11 opinion, at 5. We will not, therefore, revisit that issue, and we reject CMHA's argument that item 3 is a request for information.

{¶ 27} CMHA also argues that documents reflecting "incidents of lead paint involving children" are not public records under R.C. 149.43. CMHA brief in opposition, at 6. CMHA relies on *State ex rel. McCleary v. Roberts* (2000), 88 Ohio St.3d 365, 725 N.E.2d 1144. In *McCleary*, the city of Columbus required parents of children who used recreational facilities of the Recreation and Parks Department to "provide the Department with the names, home addresses, family information, emergency contact information, and medical history information of participating children and, in return, each child is provided a photographic identification card to present when using pools and recreation centers." Id. at 365. The Supreme Court concluded that the information was not a "record" as defined by R.C. 149.011(G) and, therefore, not a *public* record under R.C. 149.43(A)(1). Id. at 370.

{¶ 28} In this case, CMHA has attached blank copies of the questionnaire and release. The questionnaire includes areas for stating the name, address, and telephone number of a resident as well as the names and dates of birth of children. The release also includes a parent's name and signature as well as social security number. Also listed on the release are the name and age of the child along with an address.

{¶ 29} Of course, it is well established that social security numbers must be redacted from a record upon its release. See *State ex rel. Beacon Journal Publishing Co. v. Akron* (1994), 70 Ohio St.3d 605, 640 N.E.2d 164. We reject CMHA's argument, however, regarding the rest of the information on these forms.

{¶ 30} Unlike *McCleary*, the questionnaire and release do not contain the comprehensive personal, family, and medical information described in the records

at issue in *McCleary*. Rather, the questionnaire and release merely identify persons suspected to have been exposed to lead.

{¶ 31} As a consequence, the circumstances presented by this action more closely resemble those in *State ex rel. Cincinnati Enquirer v. Daniels*, 108 Ohio St.3d 518, 2006-Ohio-1215, 844 N.E.2d 1181. In *Daniels*, the Cincinnati Health Department received a request to obtain copies of "lead-contamination notices issued to property owners of units reported to be the residences of children whose blood test indicated elevated lead levels." Id. at ¶ 1. The Supreme Court rejected the respondents' argument that the federal Health Insurance Portability and Accountability Act ("HIPAA") prevented release of the records.

{¶ 32} The Supreme Court observed that "the lead-citation notices issued by the health department reveal that they are intended to advise the owners of real estate about results of department investigations and to apprise them of violations relating to lead hazards; the report identifies existing and potential lead hazards on the exterior and interior of the property, details the tests performed on the property and the results of those tests, explains the abatement measures required, provides advice about options to correct the problem, and mandates reporting of abatement measures, including the name of the abatement contractor, the abatement method, and the date of expected abatement completion. Nothing contained in these reports identifies by name, age, birth date, social security number, telephone number, family information, photograph, or other identifier any specific individual or details any specific medical examination, assessment, diagnosis, or treatment of any medical condition. There is a mere nondescript reference to 'a' child with 'an' elevated lead level." Id. at ¶ 16. The Supreme Court also expressly distinguished *McCleary* from *Daniels* and observed that "none of the specific identifiable information referred to in *McCleary* is part of the information contained in the lead-citation notices or risk-assessment reports prepared by the health department and requested by the Enquirer in this case." Id. at ¶ 17.

{¶ 33} We recognize that the information contained in a completed questionnaire or release falls somewhere in between the records that were the subject of *McCleary* and *Daniels*. Nevertheless, the bulk of the questionnaire is devoted to identifying where children routinely are and, therefore, possible sources of lead exposure. The questionnaire also provides the risk assessor the opportunity to identify future actions, e.g. "Test soil," "Council [sic] family to keep child away from bare soil areas thought to be at risk." Questionnaire at 3. The release merely authorizes the release of medical records of the "City of Cleveland, Department of Public Health Childhood Lead Poisoning Prevention Program" regarding a specific child. The record in this action does not provide a basis for distinguishing the records of Cleveland's Department of Public Health from those

of the Cincinnati Health Department. We hold, therefore, that the more applicable, controlling authority in this action is *Daniels* and that *Daniels* requires that CMHA release all disputed records to O'Shea.

{¶ 34} CMHA also argues that "all tenant documents are exempt from disclosure under the Federal Privacy Act, 5 U.S.C § 552(a)." Brief in Opposition at 8. We note, however, that Section 552(a), Title 5, U.S.Code, expressly applies to "each agency." Section 551(1), Title 5, U.S.Code, however, provides that " 'agency' means each authority of the Government of the United States." CMHA has not provided this court with any controlling authority that it is an agency under Section 551(1), Title 5, U.S.Code. Cf. *State ex rel. Garnes v. Krabach* (Aug. 3, 1976), Franklin App. No. 76AP–225, 1976 WL 190105, at *2. Rather, R.C. 3735.27 et seq. authorize the creation of a metropolitan housing authority in Ohio.

{¶ 35} CMHA also argues that any documents that reflect instances of lead poisoning would be exempt from disclosure as trial-preparation records prepared for purposes of litigation and work product. Accompanying CMHA's motion for summary judgment is the affidavit of Audrey H. Davis, chief general counsel for CMHA's Office of Legal Affairs.

{¶ 36} The following is a summary of the material averments in her affidavit: The Office of Environmental Affairs is a division of the Office of Legal Affairs. Any report that a person—adult or child—has an elevated blood-lead level "is immediately handled as a potential legal claim against CMHA." Completing the questionnaire and release is part of the investigation in defense of a potential claim. All information is maintained within the Office of Legal Affairs and kept confidential within the Office of Legal Affairs and counsel retained to represent CMHA.

{¶ 37} Although Davis and CMHA's counsel represent that CMHA maintains records regarding lead poisoning to defend against lawsuits, the questionnaire states a different intent: "The purpose of this questionnaire is to determine the likely sources of lead exposure and to assist the Lead Risk Assessor in determining where environmental sampling should be conducted." Questionnaire at 1. That is, although Davis expresses one purpose for gathering information, the questionnaire states a separate, distinct purpose. "For the trial preparation exemption to apply, R.C. 149.43(A)(4) requires records to be 'specifically compiled in reasonable anticipation' of litigation. Investigations conducted for multiple purposes do not qualify. *State ex rel. Natl. Broadcasting Co. v. Cleveland* [1988], supra, 38 Ohio St.3d [79] at 84–85, 526 N.E.2d [786] at 790–792." *State ex rel. Zuern v. Leis* (1990), 56 Ohio St.3d 20, 21, 564 N.E.2d 81.

{¶ 38} Clearly, the questionnaire states that its purpose was to assist in determining the likely sources of lead exposure and locations for environmental sampling. This purpose is separate and distinct from that set forth in the Davis affidavit. Because of the multiple purposes for the questionnaire, we hold that completed questionnaires are not exempt as trial-preparation records.

{¶ 39} Similarly, the release is clearly part of a process of gaining information on the nature and scope of the environmental hazard. Neither the questionnaire nor the release suggests that its sole purpose is to prepare for litigation. The primary concern of the questionnaire and the release is a public-health issue. It is well established that Ohio law favors making public records available and that the burden of proving that a record is exempt from being made available is on the public office asserting the exemption. *Zuern*, supra. We hold, therefore, that CMHA has failed to meet its burden and that the completed questionnaires and completed releases are not exempt from disclosure as either trial-preparation records or as attorney work product. As a consequence, CMHA must provide O'Shea with copies of these records as well as all records that document any instances of lead poisoning.

*Statutory Damages*

{¶ 40} Clearly, in light of the discussion above, CMHA failed to comply with O'Shea's request as required by R.C. 149.43(B). As a consequence, O'Shea is entitled to statutory damages under R.C. 149.43(C). Because the length of the delay in delivering the records exceeds ten days, we enter judgment for O'Shea in the amount of $1,000 statutory damages, the maximum authorized under R.C. 149.43.(C).

*Summary of Relief Granted in the May 25 Opinion*

{¶ 41} In the May 25 opinion, we did the following:

A. We denied respondent's motion for summary judgment and ordered CMHA to provide O'Shea with copies of all liability insurance policies covering 2006 through March 26, 2009 (the date of O'Shea's request).

B. We granted relator's motion for summary judgment and ordered CMHA to provide to O'Shea "[c]opies of all documents which document any and all instances of lead poisoning in the last 15 years in any dwelling owned or operated by CMHA," including but not limited to copies of each "CMHA EBL Resident Questionnaire" and "CMHA Authorization for Release of Medical Information." CMHA shall, however, redact any social security numbers.

C. We entered judgment for O'Shea in the amount of $1,000 statutory damages.

D. We granted O'Shea leave to file a motion for attorney fees and permitted CMHA to respond.

*Attorney Fees*

{¶ 42} In the complaint, O'Shea also requests attorney fees as authorized by R.C. 149.43(C). In the May 25 opinion, we authorized O'Shea to file a motion for attorney fees as well as a brief in support and evidentiary material. We also granted CMHA an opportunity to file an opposing brief and evidentiary material.

{¶ 43} O'Shea provided this court with the time entry report of attorney Michael J. O'Shea ("MJO") reflecting that he devoted 33.5 hours to seeking the records and prosecuting this action. The time report reflects the date of his activity, a description of the activity, and the time devoted to each activity in tenths of an hour. Also accompanying the time report is MJO's e-mail to CMHA's counsel indicating that his billing rate is $225 per hour. The total fee request, therefore, is $7,537.50.

{¶ 44} CMHA objects to O'Shea's request for attorney fees, however, and argues that attorney fees may not be awarded to a party pro se. Yet this action is brought on behalf of "O'Shea & Associates, Co., L.P.A." as an entity, not "Michael J. O'Shea" as an individual. CMHA has not provided this court with any authority prohibiting an award of attorney fees under R.C. 149.43 for the services provided by a lawyer working in a law firm and prosecuting a claim for the release of public records on behalf of the law firm as the requestor. As a consequence, we reject CMHA's argument that O'Shea is not entitled to attorney fees.

{¶ 45} "Subsection (C)(2)(b) of the Ohio Public Records Act permits reasonable attorney's fees if the court renders a judgment that orders compliance with the Act. The same section requires reasonable attorney's fees when the public office 'failed to respond affirmatively or negatively to the public records request in accordance with the time allowed' under R.C. 149.43(B), which provides that 'all public records responsive to the request shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours,' and that copies shall be made available within a reasonable period of time. The court may reduce attorney's fees if the public office reasonably believed that its conduct did not constitute a failure to comply with the statute and that its conduct served underlying public policy." *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland,* 8th Dist. No. 94226, 2010-Ohio-2108, 2010 WL 1919947, ¶ 5.

{¶ 46} In this action, O'Shea requested three categories of records: liability insurance policies, meeting minutes, and documents regarding instances of lead

poisoning. Approximately one week after the request, respondent's counsel notified counsel for O'Shea that they would be representing CMHA. One week later, CMHA made the vast majority of the liability insurance policies and meeting minutes available. At that time, CMHA's counsel also asserted several grounds for not releasing documents regarding instances of lead poisoning.

{¶ 47} Given the scope of O'Shea's requests, we cannot conclude that CMHA "failed to respond affirmatively or negatively to the public records request in accordance with the time allowed" under R.C. 149.43(B). R.C. 149.43(C)(2)(b)(i). Likewise, the record does not demonstrate that CMHA promised to produce the records within a specified time and did not make them available to O'Shea. R.C. 149.43(C)(2)(b)(ii).

{¶ 48} Nevertheless, CMHA has failed to demonstrate that the amount of O'Shea's request for attorney fees should be reduced. R.C.149.43(C)(2) provides:

{¶ 49} "(c) Court costs and reasonable attorney's fees awarded under this section shall be construed as remedial and not punitive. Reasonable attorney's fees shall include reasonable fees incurred to produce proof of the reasonableness and amount of the fees and to otherwise litigate entitlement to the fees. The court may reduce an award of attorney's fees to the relator or not award attorney's fees to the relator if the court determines both of the following:

{¶ 50} "(i) That, based on the ordinary application of statutory law and case law as it existed at the time of the conduct or threatened conduct of the public office or person responsible for the requested public records that allegedly constitutes a failure to comply with an obligation in accordance with division (B) of this section and that was the basis of the mandamus action, a well-informed public office or person responsible for the requested public records reasonably would believe that the conduct or threatened conduct of the public office or person responsible for the requested public records did not constitute a failure to comply with an obligation in accordance with division (B) of this section;

{¶ 51} "(ii) That a well-informed public office or person responsible for the requested public records reasonably would believe that the conduct or threatened conduct of the public office or person responsible for the requested public records as described in division (C)(2)(c)(i) of this section would serve the public policy that underlies the authority that is asserted as permitting that conduct or threatened conduct."

{¶ 52} In support of its argument that the award of fees should be reduced, CMHA contends that this is a case of first impression. As the discussion above demonstrates, however, *Daniels* provides considerable guidance with respect to release of records that involve lead-risk assessment. Of course, the stated

purpose of the questionnaire is "to determine the likely sources of lead exposure and to assist the *Lead Risk Assessor* in determining where environmental sampling should be conducted." (Emphasis added.) Questionnaire at 1.

{¶ 53} Similarly, CMHA's argument that it had a legal basis for withholding the records because of privacy concerns on behalf of its residents lacks merit. As discussed above, CMHA's contention that the federal privacy act is controlling is not supported by any controlling authority.

{¶ 54} Likewise, CMHA has failed to demonstrate that withholding the records has served the underlying public policy. In *Daniels,* the Supreme Court ordered the release of lead-risk-assessment reports maintained by the Cincinnati Health Department and lead-citation notices issued to property owners of units. Obviously, the nature of the records involved in *Daniels* and this action reflects a significant public-health risk that involves children. In light of the clear policy expressed in *Daniels* that records relating to this public-health risk must be released, CMHA has not provided a basis for withholding the release of the records requested in this action.

{¶ 55} CMHA also contends that specific activities on O'Shea's time report are inappropriate: e-mailing a coworker and receiving e-mails from LexisNexis. Yet CMHA does not provide any compelling argument or authority why consulting with a colleague or doing legal research should not be compensable as attorney fees under R.C. 149.43(C).

{¶ 56} We also find that MJO's hourly rate of $225 is reasonable. Compare *Mun. Constr. Equip.,* 2010-Ohio-2108, 2010 WL 1919947, at ¶ 7 (finding $265 per hour reasonable in a public-records action); *State ex rel. Braxton v. Nichols,* Cuyahoga App. Nos. 93653, 93654 and 93655, 2010-Ohio-3193, 2010 WL 2682336 (finding that $225 per hour is reasonable).

{¶ 57} R.C.149.43(C)(2)(c) permits reducing a request for attorney fees "if the public office reasonably believed that its conduct did not constitute a failure to comply with the statute and that its conduct served underlying public policy." *Mun. Constr. Equip. Operators' Labor Council* at ¶ 5. That is, CMHA must meet both of these criteria to maintain its argument that this court should reduce O'Shea's fees. CMHA having failed to meet either criterion, we deny CMHA's request to reduce O'Shea's request for attorney fees.

{¶ 58} Accordingly, O'Shea's request for attorney fees is granted in the amount of $7,537.50.

*Summary of Disposition of Relator's Claims*

Accordingly, the judgment in this action follows:

1. Item 1: We order CMHA to provide O'Shea with copies of all liability insurance policies covering 2006 through March 26, 2009 (the date of O'Shea's request).

2. Item 2: We grant the motion to dismiss with respect to item 2 in O'Shea's request (meeting minutes discussing liability insurance or claims).

3: Item 3: We order CMHA to provide to O'Shea "[c]opies of all documents which document any and all instances of lead poisoning in the last 15 years in any dwelling owned or operated by CMHA," including but not limited to copies of each "CMHA EBL Resident Questionnaire" and "CMHA Authorization for Release of Medical Information." CMHA shall, however, redact any social security numbers.

4. Statutory damages: We enter judgment for O'Shea in the amount of $1,000 statutory damages.

5. Attorney's fees: We enter judgment for O'Shea in the amount of $7,537.50 for attorney fees.

{¶ 59} The clerk is directed to serve upon the parties notice of this judgment and its date of entry upon the journal. Civ.R. 58(B). Respondent to pay costs. This is a final order.

Judgment accordingly.

BLACKMON and JONES, JJ., concur.

