[Cite as *Recker & Assocs. Co. v. State Dental Bd.*, 2019-Ohio-3268.]

| | |
|---|---|
| FRANK R. RECKER & ASSOCIATES CO., L.P.A. | Case No. 2019-00381PQ |
| Requester | Special Master Jeffery W. Clark |
| v. | REPORT AND RECOMMENDATION |
| OHIO STATE DENTAL BOARD | |
| Respondent | |

{¶1} On March 14, 2018, requester Frank Recker made a public records request to respondent Ohio State Dental Board (Board) seeking, in part:

> I am also requesting a copy of the consumer survey/study/poll relating to 'dental specialties' that was commissioned and/or requested by, and received by, the Board, and any documents actually requesting or commissioning the survey,

(Complaint at 5.) Following release of records in response to related requests, the Board concluded its response to the above request as follows:

> Records were redacted and/or withheld as trial preparation records, attorney-client privileged communications and/or attorney work product, based upon R. C. 149.43(A)(1)(g), and R. C. 149.43(A)(1)(v).

(*Id.* at 8.) Among the records withheld were the questions used in the survey and the results of the survey. (Reply at 2.)

{¶2} On March 18, 2019, Recker filed a complaint under R.C. 2743.75 alleging denial of access to public records in violation of R.C. 149.43(B). Following unsuccessful mediation, the Board filed a combined response and motion to dismiss (Response) on May 1, 2019. On May 24, 2019, Recker filed a response to respondent's motion to dismiss (Reply). On June 19, 2019, the Board filed additional documents as directed by the special master's order of June 5, 2019. On July 12, 2019, the Board filed a motion to file additional documents under seal. Recker has filed no opposition to this motion, which is hereby GRANTED.

**Motion to Dismiss**

{**¶3**} Although titled as a combined response to the complaint and motion to dismiss, the Board's response does not assert any defense listed in Civ.R. 12(B)(1) through (7). The Board's sole defense is that the requested survey documents are exempt from disclosure as trial preparation material and/or attorney work product. (Response, *passim.*) The Board does not dispute that the documents exist, or that they satisfy the definition of a "record" kept by the Board. R.C. 149.011(G). *See State ex rel. Beacon Journal Publg. Co. v. Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, ¶ 13.

{**¶4**} The complaint neither concedes nor demonstrates that the requested documents are subject to the claimed exemptions. Therefore, to the extent that the title of the Board's response asserts a motion to dismiss, I recommend that the court deny the motion and determine the claim on the merits.

**Burdens of Proof**

{**¶5**} In an action to enforce Ohio's Public Records Act (PRA), the burden is on the requester to prove an alleged violation. In mandamus enforcement actions,

> [a]lthough the PRA is accorded liberal construction in favor of access to public records, "the relator must still establish entitlement to the requested extraordinary relief by clear and convincing evidence."

*State ex rel. Caster v. Columbus*, 151 Ohio St.3d 425, 428, 2016-Ohio-8394, 89 N.E.3d 598, ¶ 15. Entitlement to relief under R.C. 2743.75 must likewise be established by clear and convincing evidence. *Hurt v. Liberty Twp.*, 2017-Ohio-7820, 97 N.E.3d 1153 ¶ 27-30 (5th Dist.).

{**¶6**} Where a public office asserts an exception to the Public Records Act, the burden of proving the exception rests on the public office. "Exceptions to disclosure under the Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception. A custodian does not meet this burden if it has not proven that the requested

records fall squarely within the exception." *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus. Any doubt should be resolved in favor of disclosure. *State ex rel. James v. Ohio State Univ.*, 70 Ohio St.3d 168, 169, 637 N.E.2d 911 (1994); *accord Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.*, 63 Ohio St.3d 498, 501, 589 N.E.2d 24 (1992) ("If there remains a question, R.C. 149.43 must be applied.")

**Exceptions Claimed**

{¶7} The Public Records Act requires a public office to disclose records upon request, unless an exception applies. *State ex rel. Perrea v. Cincinnati Pub. Sch.,* 123 Ohio St.3d 410, 2009-Ohio-4762, 916 N.E.2d 1049*,* ¶ 15-16. An exception is a state or federal law prohibiting or excusing disclosure of items that otherwise meet the definition of a "record" of the office, including those listed in R.C. 149.43(A)(1).[1]

{¶8} R.C. 149.43(A)(1) enumerates both specific exceptions from the definition of "public record," including trial preparation records, R.C. 149.43(A)(1)(g), and a catch-all exception for "[r]ecords the release of which is prohibited by state or federal law." R.C. 149.43(A)(1)(v). The Board asserts that the withheld records are exempt in their entirety as both trial preparation records pursuant to R.C. 149.43(A)(1)(g) and (A)(4), and common law attorney work product. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). These exceptions overlap to the extent that the statutory definition of trial preparation record expressly includes "the independent thought processes and personal trial preparation of an attorney."

{¶9} The Public Records Act provides that, as used in R.C. 149.43,

> "Trial preparation record" means any record that contains information that is specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding, including the independent thought processes and personal trial preparation of an attorney.

R.C. 149.43(A)(4). This exception must be supported by affirmative evidence:

---

[1] The terms "exception" and "exemption" are used interchangeably in case law, and in this report.

Material cannot be excepted from disclosure simply by an agency's broad assertion that it constitutes trial preparation records. For the trial preparation exception to apply, the records must have been "specifically compiled in reasonable anticipation" of litigation. R.C. 149.43(A)(4).

*Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.*, 63 Ohio St.3d 498, 502, 589 N.E.2d 24 (1992). The Supreme Court notes that:

While Ohio's public records law does not require the record to be compiled solely in anticipation of litigation, this court has consistently held that "* * * exceptions to disclosure enumerated in R.C. 149.43 are to be construed strictly against the custodian of public records and that all doubt should be resolved in favor of disclosure." *Lesak, supra*, at 4, 9 OBR at 54, 457 N.E. 2d at 823.

*State ex rel. Natl. Broad. Co. v. Cleveland*, 38 Ohio St.3d 79, 85, 526 N.E.2d 786 (1988). For example, where a standard questionnaire regarding lead exposure was routinely used to assist a public office in determining where environmental sampling should be conducted, the affidavit of the office's counsel asserting that every completed questionnaire reporting an elevated lead blood level was immediately handled as a potential legal claim was held to be insufficient evidence to support the claim that these documents were "prepared in anticipation of litigation." *State ex rel. O'Shea & Assocs. Co., L.P.A. v. Cuyahoga Metro. Hous. Auth.*, 131 Ohio St.3d 149, 2012-Ohio-115, 962 N.E.2d 297, ¶ 44; *State ex rel. O'Shea & Assocs. Co., L.P.A. v. Cuyahoga Metro. Hous. Auth.*, 190 Ohio App.3d 218, 228, 2010-Ohio-3416, 941 N.E.2d 807, ¶ 37 (8th Dist.).

{¶10} In this case, the Board asserts that it commissioned the survey from which Recker seeks the questions and results for two purposes; first, for use in the ordinary course of a Board-initiated process to revise its specialty rules, and, second, for use as evidence in reasonable anticipation of civil litigation challenging its decisions in this particular instance. The opening language of the questionnaire states only that the purpose of the survey is "to better understand what Ohio residents value and expect in their dental care." (Respondent's Exh. C: Survey and Focus Group Questions, under seal.) *See O'Shea* cases, *supra*. However, in addition to the non-litigation purpose

specified in the questionnaire, the Board attests to the following through the affidavit of

Executive Director Harry Kamdar:

3. The Board discussed possible rule changes to its specialty advertising rules at its meeting on May 10, 2017. In March of 2017, Attorney Frank Recker submitted proposed language to the Board suggesting changes to the Board's specialty advertising rules. Mr. Recker proposed revising the Board's rules to accept the American Board of Dental Specialties ("ABDS") as a recognized credentialing body for dental specialties. The Board labeled Mr. Recker's submission as Option B.

4. On May 9, 2017, Mr. Recker engaged in email communications with the Board's Chief Legal Counsel at the time, Lyndsay Nash. A copy of the string of emails is attached as Exhibit A-1. In the email sent by Mr. Recker, he stated, "Since it appears that someone unilaterally altered my proposed Option B and deleted the American Board of Dental Specialties, I see no reason for my attendance at an apparently 'rigged' proceeding tomorrow. I have done my very best for the past year to avoid litigation. But, the forces against free market competition, maintaining the status quo, and those focused on the promotion of self interest (sic) seem to have prevailed, even before the discussion began." The Board's Chief Legal Counsel explained in her response that Mr. Recker was mistaken, and that ABDS had not been removed from Option B.

5. From Mr. Recker's email, and other interactions with him, it was clear that he intended to sue the Board if the Board did not adopt Option B, or some other version that recognized ABDS. Mr. Recker has sued the Board many times, and has sued several other state dental boards to challenge specialty advertising rules in other states, so I did not take his statement as an idle threat.

6. I, along with members of the Board, was aware in 2017 that Mr. Recker had sued the Texas State Dental Board, and other state dental boards to challenge other boards' specialty rules. We were also aware of the decision of the Fifth Circuit Court of appeals in the case against the Texas board.

7. Under the direction of Board counsel, the Board entered into a contract with Measurement Resources Company ("MRC") to study Ohio consumers' attitudes and understanding about dental specialist training, certification, and advertising. The Board entered into a contract with MRC

on November 28, 2017. The Board hired MRC to use its expertise to design a survey process and survey questions that would provide the Board with qualitative and quantitative data to use in defense of civil litigation relating to the Board's proposed specialty rules.

8. The expenditure of the Board's funds for the MRC contract would not have been approved if a lawsuit was not anticipated. If no lawsuit was expected, the Board could have relied on its own expertise, the expertise of its committees and subcommittees, and input from licensees, professional organizations, and members of the public to revise its specialty rules. I am not aware of the Board previously entering into a contract with an expert to obtain consumer information to guide the Board in how to revise its rules.

(Response, Kamdar Aff. at ¶ 3-8.)

{¶11} Paragraphs four through six of the affidavit support the Board's reasonable anticipation that Recker would commence civil litigation to challenge the Board's proposed specialty rules.[2] Paragraphs seven and eight are evidence that the choice to commission a survey by an outside contractor was made specifically in anticipation of civil litigation. The Board states that it contracted with MRC "to design a survey process and survey questions that would provide the Board with qualitative and quantitative data to use in defense of civil litigation relating to the Board's proposed specialty rules." (Id. at ¶ 7.) The Board submitted a June 20, 2017 memorandum from its counsel that affirms this assertion. (Exh. D at 8-9, under seal.) The Board submitted a June 19, 2019 affidavit of its counsel further affirming this assertion and documenting counsel's role in requesting the survey and consulting with MRC. (Exh. E at ¶ 3-5, under seal.) The Board distinguishes the expenditure for the MRC contract from its past practice of relying on the expertise of its staff, committees, licensees, professional organizations, and members of the public to guide revision of its rules, and states that the reason for this departure was its anticipation of litigation. (Kamdar Aff. at ¶ 8.)

---

[2] Recker subsequently did file a federal lawsuit challenging the constitutionality of the specialty rules. (*Id.* at ¶ 9.)

{¶12} In his reply, Recker does not address, or even reference, R.C. 149.43(A)(1)(g) and (A)(4). Instead, Recker responds that the Board has failed to meet "the burden of showing that the materials should not be discoverable" under the civil rules governing attorney work product. (Reply at 3.) Recker asserts that the withheld questions are "fact work product," which receives lesser protection in discovery. (*Id.*) However, and as Recker's wording affirms, these arguments apply only to discovery during civil litigation, which is governed by Civ.R. 26. They have no bearing on whether records are exempt from public records disclosure pursuant to the separate statutory exception set forth in R.C. 149.43(A)(1)(g) and (A)(4).

{¶13} I find that while the survey questions and responses were not compiled *solely* for the purposes of litigation, the Board presented sufficient evidence that it *specifically* compiled this survey in a novel manner, in conscious and reasonable anticipation of litigation, by contracting with an outside expert instead of through its usual internal process. Weighing the evidence submitted by the Board against the lack of evidence from Recker, I find that the Board has met its burden to show that the requested survey records fall squarely within the definition of "trial preparation record" as set forth in R.C. 149.43(A)(4).

{¶14} The Board separately asserts that the withheld material is excepted from disclosure as common law attorney work product. The Supreme Court of Ohio has explained work product protection as follows:

> The work-product doctrine emanates from *Hickman v. Taylor* (1947), 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451, in which the Supreme Court of the United States recognized that "[p]roper preparation of a client's case demands that [the attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. * * * This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways - aptly though roughly termed by the Circuit Court of Appeals in this case as the 'Work product of the lawyer.' Were such materials open to opposing

counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served."

Addressing these concerns, the work-product doctrine provides a *qualified* privilege protecting the attorney's mental processes in preparation of litigation, establishing "a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary." However, as the Supreme Court of the United States has explained, "the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system," and the privilege afforded by the work-product doctrine is not absolute.

*Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp*, 127 Ohio St.3d 161, 2010-0hio-4469, 937 N.E.2d 53, ¶ 54-55 (internal citations omitted).

{¶15} On review of the pleadings, affidavits, and materials submitted under seal, I find that, other than the bare assertion that Board counsel listed "subjects" for MRC to cover in the survey (Exh. E at ¶ 4, under seal), there is insufficient support for the proposition that the survey questions were drafted by or in consultation with counsel for the Board so as to reflect the attorney's mental processes in preparation of litigation. The evidence does support that counsel advised the Board to enter into a contract with MRC for the survey. (Kamdar Aff. at ¶ 7; Exh. D at 9, under seal; Exh. E at ¶ 3, under seal.) Under these facts, I find that the common law attorney work product privilege does not apply to the withheld records.

{¶16} I find that the Board has met its burden to show that the requested records are subject in their entirety to the statutory trial preparation exception, but has not met that burden with respect to the common law attorney work product privilege. Based on the finding that the trial preparation exception applies to the withheld records, I find that Recker has failed to establish that the survey documents are public records subject to disclosure.

**Conclusion**

{¶17} Accordingly, I recommend that the court DENY requester's claim for production of records. I recommend that costs be assessed to requester.

{¶18} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

JEFFERY W. CLARK
Special Master

**Filed July 5, 2019**
**Sent to S.C. Reporter 8/15/19**