[Cite as *State ex rel. Perrea v. Cincinnati Pub. Schools,* 123 Ohio St.3d 410, 2009-Ohio-4762.]

THE STATE EX REL. PERREA *v.* CINCINNATI PUBLIC SCHOOLS.

[Cite as *State ex rel. Perrea v. Cincinnati Pub. Schools,*

123 Ohio St.3d 410, 2009-Ohio-4762.]

*Public Records Act — Writ of mandamus sought to compel public school district to provide copies of semester exams administered in 2007 — Exams are trade secrets and are thus not public records — Writ denied.*

(No. 2008-0748 ─ Submitted April 8, 2009 ─ Decided September 17, 2009.)

IN MANDAMUS.

_____

LANZINGER, J.

{¶ 1} This is an original action for a writ of mandamus to compel a public school district to provide copies of the semester examinations that were administered to ninth-grade students in the district in January 2007. Because the school district has met its burden to establish that the requested examinations are excepted from disclosure under the Public Records Act, we deny the writ.

## I. Case Background

### A. The Strategic Plan: Building Futures

{¶ 2} In April 2006, respondent, Cincinnati Public Schools ("CPS"), a public school district, adopted Strategic Plan 2006-2011, which is entitled "Building Futures." The plan set forth certain goals and the strategies to be used to achieve those goals. Under the plan, students are to be "assessed frequently on their progress toward meeting performance standards," and teachers are to use "classroom-based assessments to monitor students' progress." Based on the assessment results, teachers are to "differentiate instruction" by "identifying individual student needs."

**{¶ 3}** One of the plan's goals is that all students "graduate and are prepared for postsecondary education, successful careers and productive citizenship." One strategy for implementing this goal is for the district to provide "high school common exams * * * for each semester of standards-based core courses."

*B. Semester Exams*

**{¶ 4}** Consistent with the district's strategic plan, CPS hired WestEd, a nonprofit testing agency that develops assessment tools, to work with some of CPS's faculty members to create semester exams. The general goals of the semester exams are (1) to bring consistency to grading within CPS, (2) to align curriculum throughout the district, (3) to aid CPS students in performing well on the Ohio Graduation Test as well as to improve the district as a whole, and (4) to prepare all students for postsecondary education. CPS paid WestEd over $257,000 for the development of ninth-grade semester exams, $276,000 for the tenth-grade exams, and over $276,000 for the eleventh-grade exams.

**{¶ 5}** CPS initially implemented the semester exams for the ninth-grade core subjects in English, math, science, and history in January 2007. CPS currently administers semester exams to ninth-, tenth-, and eleventh-grade students twice a year in these four subject areas. All students taking the core courses take the semester exams.

**{¶ 6}** Each semester exam is divided into multiple-choice and constructed-response questions, with the latter category consisting of short-answer or essay questions.[1] The semester exams account for 25 percent of a student's grade in the subjects tested. There is no bank of multiple-choice

---

1. Each exam, except that for English, has 45 multiple-choice questions and four constructed-response questions. The English exams have 40 multiple-choice questions and four longer constructed-response questions.

questions for the semester exams, so each question is reused the next year unless it is replaced because it has been determined to be flawed.

{¶ 7} Before each semester exam is administered, CPS requires teachers to predict the performance for each student based on what they already know about the student's performance and skill level. After the students take the exam, CPS requires teachers to score the answers to the constructed-response questions and record them. The district testing office scores the multiple-choice portion of the exam, and CPS posts the results on a website to which the principals and teachers have access.

{¶ 8} CPS implements certain security measures to protect the semester exams. The exams are kept in a secure area at a central location before they are administered, and when the exams are administered, students may not copy the exams or have devices that could reproduce their contents. Staff members are also not permitted to copy exams, and all exams must be immediately collected after they are used and returned to the CPS central offices for secure storage by the following week. CPS did post scoring guidelines for the four constructed-response questions for each exam on its intranet for teachers to use when scoring the exams,[2] but in order to access the guidelines, a person would need to know the specific web address. Moreover, none of the actual exam questions was posted on the website.

### C. Requests for Records

{¶ 9} Relator, Paul Perrea, is a teacher at Hughes High School, which is within the school district. Perrea became concerned about the design, implementation, and scoring of the semester exams and, beginning in February 2007, made repeated requests for access to them. Perrea's later requests clarified that he wanted copies of the ninth-grade semester exams administered in January

---

2. According to Perrea's affidavit, the grading guidelines were available on the intranet from June 2008 through October 2008.

2007 and that he "did not intend to use the copies for any commercial purpose." Perrea specified that he would use the copies only "for criticism, research, comment, and/or education." Consistent with a petition signed by about 60 CPS teachers, Perrea noted in one of his requests that he wanted the exams to be released so that they could be evaluated by an independent, qualified psychometrician for "fairness, accuracy, and validity."

{¶ 10} CPS refused to produce the semester exams, claiming that the "documents contain secure testing material and copyrighted material and, therefore, are not subject to release as a public record."

{¶ 11} On April 21, 2008, Perrea filed this action for a writ of mandamus to compel CPS to provide him with copies of the ninth-grade semester exams administered by CPS in January 2007. CPS filed an answer, and after an unsuccessful attempt at mediation, the court granted an alternative writ. The parties filed evidence and briefs.[3]

{¶ 12} This cause is now before the court for a consideration of the merits.

## II. Legal Analysis

### A. Mandamus in Public Records Cases

{¶ 13} "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6; R.C. 149.43(C). The Public Records Act implements the state's policy that "open government serves the public interest and our democratic system." *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 20. "Consistent with this policy, we construe R.C. 149.43 liberally in favor of broad access and resolve any doubt in favor of

---

3. Perrea also filed two motions to strike and a motion for order for supplemental filing. Those motions are denied.

disclosure of public records." *State ex rel. Glasgow v. Jones*, 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, ¶ 13.

{¶ 14} It is unquestioned here that CPS is a public office for purposes of the Public Records Act. In fact, R.C. 149.43(A)(1) defines "public record" to mean "records kept by any public office, including * * * school district units." See also *State ex rel. Consumer News Servs., Inc. v. Worthington City Bd. of Edn.*, 97 Ohio St.3d 58, 2002-Ohio-5311, 776 N.E.2d 82, ¶ 40 (school districts are public offices subject to the Public Records Act).

{¶ 15} Under R.C. 149.011(G), records are subject to the Public Records Act if they are documents created or received by the public office that "serve[] to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." In its Strategic Plan 2006-2011, CPS determined that it would assess students frequently on their progress toward meeting the performance standards and that it would provide teachers with common benchmark assessments for each grade and for each subject. The semester exams were created to fulfill these policy decisions. Thus, CPS received the semester exams, and the exams document one of their testing procedures.

{¶ 16} In fact, CPS does not contest that the semester exams meet the basic definition of "records" in R.C. 149.011(G), but focuses its arguments on two exceptions. Therefore, unless an exception to disclosure applies, the requested ninth-grade semester exams are subject to disclosure under R.C. 149.43.

*B. Exceptions to Disclosure*

{¶ 17} "Exceptions to disclosure under the Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception. A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception." *State ex rel. Cincinnati Enquirer v. Jones-*

5

*Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus.

{¶ 18} CPS asserts that the ninth-grade semester exams that were administered to students in January 2007 need not be disclosed, because they are exempted from disclosure as trade secrets and copyrighted materials.

*C. Trade Secrets*

{¶ 19} CPS first contends that the requested semester exams need not be disclosed to Perrea because they constitute trade secrets. "The Ohio Uniform Trade Secrets Act, R.C. 1333.61 through 1333.69, is a state law exempting trade secrets from disclosure under R.C. 149.43." *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency* (2000), 88 Ohio St.3d 166, 172, 724 N.E.2d 411.

{¶ 20} R.C. 1333.61(D) defines "trade secret" as "information * * * that satisfies both of the following:

{¶ 21} "(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

{¶ 22} "(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

{¶ 23} We have adopted the following factors in determining whether a trade secret claim meets the statutory definition:

{¶ 24} "(1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount

of time and expense it would take for others to acquire and duplicate the information." *State ex rel. The Plain Dealer v. Ohio Dept. of Ins.* (1997), 80 Ohio St.3d 513, 524-525, 687 N.E.2d 661; *State ex rel. Besser v. Ohio State Univ.* (2000), 89 Ohio St.3d 396, 399-400, 732 N.E.2d 373.

{¶ 25} "An entity claiming trade secret status bears the burden to identify and demonstrate that the material is included in categories of protected information under the statute and additionally must take some active steps to maintain its secrecy." *Besser*, 89 Ohio St.3d at 400, 732 N.E.2d 373, citing *Fred Siegel Co., L.P.A. v. Arter & Hadden* (1999), 85 Ohio St.3d 171, 181, 707 N.E.2d 853.

{¶ 26} CPS established that it spent over $750,000 on the development of the ninth-, tenth-, and eleventh-grade semester exams. And it is axiomatic that the semester exams would have no or minimal value if they were made public before they were administered. Also, CPS established that it would have to spend a considerable amount of money to recreate the tests every year. Estimates indicate that replacing just half the questions on the ninth- and tenth-grade exams would exceed $270,000. Due to the cost to create new exams, CPS claims that it will no longer be able to administer semester exams if the tests are made public.

{¶ 27} There is also evidence that CPS has taken steps to maintain the secrecy of the semester exams. Students are not permitted to make copies of the exams or possess cell phones, cameras, or similar devices when the exams are administered. And although the teachers are not required to sign confidentiality agreements, they are instructed that they are not allowed to keep or make copies of the exams. In addition, teachers have only limited access to the exams. The exams are kept in a secure area at a central location until they are administered, and all exams must be returned the week after they are administered. These security efforts are similar to those found sufficient in *State ex rel. Carr v. Akron, 1*12 Ohio St.3d 351, 2006-Ohio-6714, 859 N.E.2d 948. In that case, the test

developers signed confidentiality agreements, test takers were prohibited from removing or copying the exams, and the exams were stored in a locked and secure facility. Id. at ¶ 55.

{¶ 28} We are not persuaded by Perrea's argument that the placement of scoring guidelines on CPS's intranet publicly disseminated the exams. Perrea, as a CPS teacher, knew the intranet web address. No evidence was provided that this address was known to persons other than teachers or that the scoring guidelines could be accessed without the intranet address. The scoring guidelines do not restate the actual test questions. Each guideline provides an exemplar of a possible response that will score points. In his second affidavit, Perrea suggests "the most likely questions" to the constructed-response questions based on his review of the scoring guidelines. We have no evidence, however, that these are the actual questions on the exams. There are a number of different forms a question can take. Because the scoring guidelines were not accessible without the intranet address and because the guidelines do not reveal the actual questions asked, CPS has maintained the secrecy of the semester exams.

{¶ 29} Even if the scoring guidelines could be used to reconstruct the four constructed-response questions, this partial disclosure would not foreclose the possibility of a trade secret. See *Plain Dealer*, 80 Ohio St.3d at 528, 687 N.E.2d 661; *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio EPA* (2000), 88 Ohio St.3d 166, 174, 724 N.E.2d 411. The semester exams are made up of a combination of constructed-response and multiple-choice questions. There is no evidence that the 40 to 45 multiple-choice questions on each exam were publicly disseminated in any manner. It is the combination of all the questions that enable CPS to achieve its goals and that give the exams their value.

{¶ 30} To rebut CPS's assertion that the exams are trade secrets, Perrea relies on *State ex rel. Rea v. Ohio Dept. of Edn.* (1998), 81 Ohio St.3d 527, 692 N.E.2d 596. However, *Rea* is distinguishable. First, in *Rea*, we questioned

whether public entities could even possess trade secrets. Id. at 532. We answered that question in the affirmative in *State ex rel. Besser v. Ohio State Univ.* (2000), 87 Ohio St.3d 535, 543, 721 N.E.2d 1044.

{¶ 31} Second, *Rea* involved two tests—the Twelfth Grade Ohio Proficiency Test ("OPT") and the Ohio Vocational Competency Assessment ("OVCA")—that consisted of questions from a question bank. For the OVCA, the question bank contained approximately 14,000 questions. 81 Ohio St.3d at 529, 692 N.E.2d 596. Every year, the Ohio Department of Education creates a new OPT using questions that have been used in previous years as well as new questions from the bank that have not previously been used; thus, no two tests are identical. Id. The Ohio State University does the same for the OVCA. Id. Here, the CPS administers the exact same tests year after year. There is no question bank, and a question is removed only after it has been determined to be flawed.

{¶ 32} We further note that ordering disclosure of the semester exams would open the door for students to have access to these tests as well, undermining the tests' effectiveness in measuring student ability if the test is given in the future. That is why CPS claims that it will no longer administer the test if we order disclosure. Thus, ordering disclosure will reduce CPS's ability to evaluate student learning. Such a result is not in line with the policy behind the Public Records Act. "We must * * * construe statutes to avoid unreasonable or absurd results." *State ex rel. Cincinnati Post v. Cincinnati* (1996), 76 Ohio St.3d 540, 543, 668 N.E.2d 903; R.C. 1.47(C).

{¶ 33} For the foregoing reasons, we hold that Perrea is not entitled to disclosure of these records, because they are trade secrets and thus are not public records. In light of this holding, we need not address CPS's argument that the semester exams are also exempt from disclosure under federal copyright law. See *State ex rel. Carr v. Akron*, 112 Ohio St.3d 351, 2006-Ohio-6714, 859 N.E.2d

948, ¶ 57; *State ex rel. Asti v. Ohio Dept. of Youth Servs.,* 107 Ohio St.3d 262, 2005-Ohio-6432, 838 N.E.2d 658, ¶ 34.

### III. Conclusion

**{¶ 34}** Based on the foregoing, relator is not entitled to the requested extraordinary relief in mandamus to compel disclosure of the requested records. Therefore, we deny the writ.

Writ denied.

PFEIFER, LUNDBERG STRATTON, O'DONNELL, and CUPP, JJ., concur.

MOYER, C.J., and O'CONNOR, J., concur in part and dissent in part.

_____

**O'CONNOR, J., concurring in part and dissenting in part.**

**{¶ 35}** I agree with the majority that CPS established that the multiple-choice portions of the exams are trade secrets and, therefore, that the multiple-choice portions of the exams are not public records. However, because CPS has not established that it made reasonable efforts to secure its intranet website, I would hold that CPS did not meet its burden of showing that the constructed-response portions of the exams are trade secrets. And because I would hold that only the multiple-choice questions on the semester exams are trade secrets, further inquiry is necessary to determine whether the copyright exception applies to prevent disclosure of the constructed-response questions.

**{¶ 36}** CPS contends that the requested semester exams are copyrighted materials and, thus, it would violate federal law to release them. Under R.C. 149.43(A)(1)(v), a record is not a public record if its release is prohibited by state or federal law. CPS's claim lacks merit because "[e]xceptions to public records requests do not include the copyright defense where the public records fall under the 'fair-use' exception to the federal copyright statute or where the copyrighted material is purchased by the public office or agency that is the subject of the public records request." *Rea*, 81 Ohio St.3d at 532, 692 N.E.2d 596.

**{¶ 37}** The "fair use" exception to federal copyright law is codified at Section 107, Title 17, U.S.Code and provides:

**{¶ 38}** "[T]he fair use of a copyrighted work, including such use by reproduction in copies * * *, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

**{¶ 39}** "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

**{¶ 40}** "(2) the nature of the copyrighted work;

**{¶ 41}** "(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

**{¶ 42}** "(4) the effect of the use upon the potential market for or value of the copyrighted work."

**{¶ 43}** In *Rea*, this court held that because the individuals requesting the release of a previously administered statewide vocational examination and a statewide proficiency test had no commercial purpose in doing so, copyright laws did not bar their release under R.C. 149.43: "Relators have no intention of copying these materials for commercial resale purposes. The fair-use exception allows reproduction and copies without infringement of a copyright where the material will be used for purposes such as criticism, research, comment, and for other educational or nonprofit purposes that are not commercial in nature." 81 Ohio St.3d at 532, 692 N.E.2d 596.

**{¶ 44}** Similarly, Perrea has no intention of copying the requested ninth-grade semester exams for commercial purposes. He intends to use the copies for

11

criticism, research, comment, and/or education.[4] Nor is there any evidence of the effect of Perrea's proposed use of the exams on the potential market for the exams' copyrighted portions. Therefore, I would hold that CPS did not establish that the requested semester exams are excepted from disclosure as copyrighted materials.

{¶ 45} Because I would hold that relator is entitled to partial relief, I would grant a writ of mandamus to compel disclosure of the constructed-response questions of the ninth-grade semester examinations. In all other aspects, I would deny the writ.

MOYER, C.J., concurs in the foregoing opinion.

———————————

Ted L. Wills, for relator.

Taft Stettinius & Hollister, L.L.P., Mark J. Stepaniak, and Ryan M. Martin, for respondent.

———————————

---

4. It is true that a requester's purpose is not relevant in determining whether public records should be released, but contrary to CPS's argument, the requester's intended use is relevant in determining whether the fair-use exception applies when the public office uses copyright as a defense.