[Cite as *Buduson v. Cleveland*, 2019-Ohio-963.]

| | |
|---|---|
| SARAH L. BUDUSON | Case No. 2018-00300PQ |
| Requester | Special Master Jeffery W. Clark |
| v. | <u>REPORT AND RECOMMENDATION</u> |
| CITY OF CLEVELAND | |
| Respondent | |

{¶1} On January 22, 2018, Investigative Producer Samah Assad made a public records request to respondent City of Cleveland on behalf of WEWS News 5:

> Pursuant to the Ohio Open Records Act, News 5 requests any and all proposals, documents, internal and external reports, memos, videos, photographs and any other documentation – paper or electronic – related to the bid for Amazon's second headquarters, HQ2.

(Complaint at 5.) On February 8, 2018, the Cleveland Public Records Center acknowledged receipt of the request and advised "You will be contacted via email when your request has been completed." (*Id.*) Assad sent several inquiries as to the status of the request, but received no response from Cleveland. (*Id.* at 2-4.) On February 22, 2018, requester Investigative Reporter Sarah Buduson sent an email to Assistant Media Relations Director Latoya Hunter:

> Per our conversation, I am writing to inquire about public records request # C000177-012218. It has been one month since 5 On You [sic] Side Investigators submitted our request. We would like to know why it has yet to be fulfilled by the City of Cleveland. In the interest of accuracy and fairness, please cite the relevant FOIA exclusion and/or exemption that would allow us to explain to viewers why the city is concealing a record many other cities were eager to share with their citizens.

(*Id.* at 2.) Cleveland did not respond.

{¶2} On February 27, 2018, Buduson filed a complaint on behalf of WEWS under R.C. 2743.75 alleging denial of access to public records by Cleveland in violation of

R.C. 149.43(B). On June 22, 2018, the court was notified that mediation had failed to resolve all disputed issues. On July 25, 2018, Cleveland filed its answer (Response). On August 1, 2018, Cleveland filed an additional pleading (Supplemental Response). On August 28, 2018, Buduson filed a reply. On September 26, 2018, Cleveland filed an additional brief, document, and affidavit regarding JobsOhio records (Second Supplemental Response). On October 19, 2018, Cleveland filed a brief in response to the special master's order of October 3, 2018 (Third Supplemental Response). Cleveland has filed an unredacted copy of its written proposal to Amazon, Inc. to host Amazon's HQ2 ("bid document") and a copy of the redacted version of the bid document that has been released to the public ("redacted bid document"). On November 15, 2018, Buduson filed a second reply to Cleveland's pleadings.

**Motion to Dismiss**

{¶3} Cleveland moves to dismiss the complaint on the ground that the request was overly broad and ambiguous. (Response, *passim.*) In construing a motion to dismiss pursuant to Civ.R. 12(B)(6), the court must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). Then, before the court may dismiss the complaint, it must appear beyond doubt that plaintiff can prove no set of facts entitling him to recovery. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975).

{¶4} R.C. 149.43(B)(2) permits, but does not require, a public office to deny a request that is ambiguous, overly broad, or does not enable the office to reasonably identify what public records are being requested. "[I]t is the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue." *State ex rel. Zidonis v. Columbus State Community College*, 133 Ohio St.3d 122, 2012-Ohio-4228, 976 N.E.2d 861, ¶ 21. *See generally Gupta v. Cleveland*, Ct. of Cl. No. 2017-00840PQ, 2018-Ohio-3475, ¶ 22-29. As used in the request, I find that the

terms "any and all," "documents," "internal and external reports, memos, videos, photographs and any other documentation – paper or electronic," and "related to," are either ambiguous in meaning or cast an overly broad net for records to be searched.

{¶5} However, a proper request embedded within an otherwise ambiguous or overly broad request may be enforceable. In *State ex rel. Glasgow v. Jones,* 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, ¶ 1, 17-24, a request for all of a state representative's email was found overly broad, but an embedded request – "including, but not limited to [a particular house bill]" – was sufficiently narrow to be a proper request. *Accord, Gupta* at ¶ 57. *See also Strothers v. Keenon*, 8th Dist. Cuyahoga No. 103313, 2016-Ohio-405, 59 N.E.3d 556, ¶ 24-30 (clarified request "ordered released in the spirit of R.C. 149.43, which requires the Public Records Act to be liberally construed in favor of disclosure."). In this case, the wording of the request reasonably identifies the bid document by the wording: "News 5 requests * * * the bid for Amazon's second headquarters, HQ2." In the evidence and pleadings, Cleveland expresses no doubt that the request sought the bid document. The fact that Cleveland failed to deny any part of the request as ambiguous or overly broad prior to litigation suggests that Cleveland accepted at least part of the request as sufficiently specific. (Complaint at 5.) Cleveland's acceptance of sufficient clarity is further supported by its disclosure of "161 pages of *readily identifiable* documents incident to the Amazon bid" (Response at 4), a reference to its June 15, 2018 online posting of the redacted bid document. (Supp. Response at 3.) Cleveland did not invite revision of the request or offer Buduson information to facilitate revision, as required by R.C. 149.43(B)(2) when denying a request as ambiguous or overly broad. Having accepted this request for processing, failing to deny it as ambiguous or overly broad, providing no information or opportunity to revise it, and referencing the bid document as "readily identifiable" from the request, Cleveland cannot now argue that the bid document was not a responsive

record. *See State ex rel. Bott Law Group, LLC v. Ohio Dept. of Natural Res.*, 10th Dist. Franklin No. 12AP-448, 2013-Ohio-5219, ¶ 38-41.

**{¶6}** I recommend that the motion to dismiss be DENIED as to the embedded request for "the bid for Amazon's second headquarters, HQ2." I recommend that the motion be GRANTED as to the remainder of the request.[1]

### The Withheld Records

**{¶7}** The Cleveland bid document consists of a 33-page bid response with a 192-page appendix. (Supp. Response at 3.) The City publicly posted 161 pages of the bid document on June 15, 2018.[2] The portions of the records withheld by redaction, and the 64 pages withheld in their entirety, include specific terms of state and local financial incentives offered to Amazon. (Ebersole Aff. at ¶ 8; Deptola Aff. at ¶ 2.) Cleveland also withheld a substantial amount of surrounding text, labels, images, and other material.

### Purpose of Public Records Act

**{¶8}** "Public records are one portal through which the people observe their government, ensuring its accountability, integrity, and equity while minimizing sovereign mischief and malfeasance." *Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 16. "[T]he inherent, fundamental policy of R.C. 149.43 is to promote open government, not restrict it." *State ex. rel. Besser v. Ohio State Univ.*, 89 Ohio St.3d 396, 398 (2000) ("*Besser II*"). Public records inform the significant public interest in the use of their tax money and other public funds. *State ex rel. Toledo Blade Co. v. Univ. of Toledo Foundation*, 65 Ohio St.3d 258, 261-263, 602 N.E.2d 1159 (1992). Therefore, R.C. 149.43 must be construed liberally in favor of broad access, with any doubt resolved in favor of disclosure of public records. *Glasgow* at ¶ 13; *Besser II* at 405.

---

[1] Even were the court to find that the entire request was ambiguous or overly broad, it would not preclude Buduson from making a new request for the bid document. The parties are encouraged to utilize the tools provided by R.C. 149.43(8)(2) through (7) in negotiating and revising future requests.

[2] *See* https://www.cleveland.com/metro/index.ssf/2018/06/heavily_ redacted_version_of_am.html (accessed Feb. 11, 2019).

**Burdens of Proof**

{¶9} In an action to enforce Ohio's Public Records Act (PRA), the burden is on the requester to prove an alleged violation. In mandamus enforcement actions,

> [a]lthough the PRA is accorded liberal construction in favor of access to public records, "the relator must still establish entitlement to the requested extraordinary relief by clear and convincing evidence."

*State ex rel. Caster v. Columbus*, 151 Ohio St.3d 425, 428, 2016-Ohio-8394, 89 N.E.3d 598, ¶ 15. Entitlement to relief under R.C. 2743.75 must likewise be established by clear and convincing evidence. *Hurt v. Liberty Twp.*, 2017-Ohio-7820, 97 N.E.3d 1153, ¶ 27-30 (5th Dist.).

{¶10} However, the burden of proving that any exception to the Public Records Act applies rests on the public office. The standard is more than mere preponderance of the evidence, as it is enhanced by several factors:

> Exceptions to disclosure under the Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception. A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception.

*State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus. Also, in construing an exception "doubt should be resolved in favor of disclosure." *State ex rel. James v. Ohio State Univ.*, 70 Ohio St.3d 168, 169, 637 N.E.2d 911 (1994); *State ex rel. Rea v. Ohio Dept. of Edn.*, 81 Ohio St.3d 527, 530, 692 N.E.2d 596 (1998). These factors are separate from, and in addition to, the burden of proof that applies to privileges and confidentiality laws in other contexts. Significantly, no Ohio appellate court has held that public offices need only prove exceptions to the Public Records Act by a preponderance of the evidence.

{¶11} The Supreme Court's emphasis on the burden to prove that withheld records "fall squarely" within an exception, with the exception "strictly construed against" the public-records custodian, and with "any doubt * * * to be resolved in favor of

providing access" creates a *sui generis* standard of proof for public records exceptions.[3] The enhanced standard favors the non-asserting party, in contrast to merely determining the "greater weight" of the evidence. The enhanced burden of proof for exceptions to records access expressly supports the end that the Public Records Act is construed "liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records." *State ex rel. Hogan Lovells U.S., L.L.P. v. Dept. of Rehab & Corr.,* Slip Opinion at 2018-Ohio-5133, ¶ 26. This enhanced burden of proof is closer to a "clear and convincing" standard.

### Exceptions Claimed

{¶12} The Public Records Act requires a public office to disclose records upon request, unless an exception applies. *State ex rel. Perrea v. Cincinnati Pub. Sch.,* 123 Ohio St.3d 410, 2009-Ohio-4762, 916 N.E.2d 1049*,* ¶ 15-16. An exception is a state or federal law prohibiting or excusing disclosure of items that otherwise meet the definition of a "record" of the office, including those listed in R.C. 149.43(A)(1).[4] "[I]n enumerating very narrow, specific exceptions to the public records statute, the General Assembly has already weighed and balanced the competing public policy considerations between the public's right to know how its state agencies make decisions and the potential harm, inconvenience or burden imposed on the agency by disclosure." *James v. OSU,* 70 Ohio St.3d 168, 172, 637 N.E.2d 911 (1994). Withholding of records is authorized only within the limits of these narrowly construed statutory exceptions, and not simply because a public office disagrees with those limits. *WBNS TV, Inc. v. Dues* 101 Ohio St.3d 406, 2004-Ohio-1497, 805 N.E.2d 1116, ¶ 36-37.

---

[3] The remedies for violation of the Public Records Act – a mandamus action, or the special statutory proceeding under R.C. 2743.75 – are not ordinary civil cases. For example, requesters are handicapped by the inability to view withheld records filed with the court under seal. The heightened burden on the public office offsets this handicap.

[4] The terms "exception" and "exemption" are used interchangeably in case law, and in this report.

**{¶13}** Cleveland asserts exceptions from disclosure for 1) JobsOhio records, and 2) trade secret information.[5] Cleveland limits application of each exception to specific paragraphs, words and figures in the bid document. (Third Supp. Response at 2-6.) The exceptions have thus been abandoned as to the remainder of the bid document. *State ex rel. Toledo Blade Co. v. Toledo-Lucas County Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 19. I find at the outset that all material for which Cleveland no longer asserts an exemption must be disclosed. *State ex rel. Plain Dealer v. Ohio Dept. of Ins.*, 80 Ohio St.3d 513, 525, 687 N.E.2d 661 (1997).

**JobsOhio Records**

**{¶14}** JobsOhio is a nonprofit corporation formed to promote economic development, job creation, job retention, job training, and the recruitment of business to the state. R.C. 187.01. The General Assembly specifically excludes JobsOhio from the definition of a "public office." R.C. 149.011(A). With respect to documents created by JobsOhio, the General Assembly further provides that

> Records created by JobsOhio are not public records for the purposes of Chapter 149. of the Revised Code, regardless of who may have custody of the records, unless the record is designated to be available to the public by the contract under division (B)(2) of this section.

R.C. 187.04(C)(1).[6] Thus, a person may not use the Public Records Act to obtain records directly from JobsOhio, or from anyone who "has custody" of records created by JobsOhio. *State ex rel. Ullmann v. JobsOhio*, 138 Ohio St.3d 83, 2013-Ohio-5188. However, the statute applies only to JobsOhio *records*. It does not protect JobsOhio

---

[5] Cleveland did not assert these exceptions, or any other defense, prior to litigation. However, the failure of a public office to provide the required explanation for initial denial "shall not preclude the public office * * * from relying upon additional reasons or legal authority in defending an action commenced under division (C) of this section." R.C. 149.43(B)(3).

[6] The evidence before the court shows that JobsOhio had not entered into a "fully executed incentive proposal." (Second Supp. Response at 3-6.) Thus, no JobsOhio records related to the bid have been designated to be made available to the public pursuant to R.C. 187.04(B)(2)(e).

*information.*[7] Cleveland thus has the burden to show that it withheld only "*records created by JobsOhio.*"

{¶15} The bid document does contain one "record created by JobsOhio." (Bid Document at 90-95.) The record is an October 12, 2017 letter signed by John Minor, President and Chief Investment Officer, JobsOhio, and Matt Peters, Assistant Director, Development Services Agency. Attached are five pages of proposed financial assistance terms and conditions. The six pages are self-authenticated as business records of JobsOhio by the signatures, references to described attachments, and the agency headers and branding images. I find that this letter constitutes a "record created by JobsOhio" that may be withheld pursuant to R.C. 187.04(C)(1).

{¶16} However, Cleveland fails to show that any other item in the bid document is a record created by JobsOhio. Cleveland asserts only that information from the Oct. 12, 2017 JobsOhio letter, and other information allegedly from JobsOhio, is scattered elsewhere in the bid document. (Third Supp. Response at 2-3.) I find that this dispersed and repackaged information does not fall squarely within the clear statutory exception for "records" of JobsOhio.

> The definition of "records" for purposes of Chapter 149. of the Revised Code is
>
> > any document, device, or item, regardless of physical form or characteristic, including an electronic record, created or received by or coming under the jurisdiction of any public office[8] of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.

---

[7] "Information" is not defined in R.C. Chapters 149 or 187, but has a common meaning as, "1. Facts provided or learned about something or someone. 2. What is conveyed or represented by a particular arrangement or sequence of things." Oxford Living Dictionary, https://en.oxforddictionaries.com/ definition /information (accessed Jan. 29, 2019).

[8] Because JobsOhio is not a "public office," the documents it creates arguably do not meet the definition as items "created or received by or coming under the jurisdiction of any *public office* of the state" or documenting the *public office's* activities. This conundrum seems unintentional, as R.C. 187.04(C)(1) conditionally but expressly retains the status of "public record" for certain documents.

R.C. 149.011(G). Records are "documents, devices, or items" in some physical form, including electronic recordings. *State ex rel. Data Trace Info. Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288, ¶ 28-32. The information must be recorded on a fixed medium before it can meet the definition of a "record." While records *contain* information, unrecorded information by itself is not a "record." *State ex rel. Kerner v. State Teachers Retirement Bd.*, 82 Ohio St.3d 273, 274-275, 695 N.E.2d 256 (1998) (requested information compilation did not "exist in record form"); *Woodman v. Lakewood*, 44 Ohio App.3d 118, 122, 541 N.E.2d 1084 (8th Dist.1988) ("The Ohio Public Records Law applies only to recorded materials."). A request that a public office search for information is not enforceable as a public *records* request. *State ex rel. O'Shea & Assocs. Co., L.P.A. v. Cuyahoga Metro. Hous. Auth.*, 190 Ohio App.3d 218, 2010-Ohio-3416, 941 N.E.2d 807, ¶ 7-11 (8th Dist.); *State ex rel. Lanham v. Ohio Adult Parole Auth.,* 80 Ohio St.3d 425, 427, 687 N.E.2d 283 (1997); *State ex rel. McElrath v. Cleveland*, 8th Dist. Cuyahoga No. 106078, 2018-Ohio-1753, ¶ 16 ("the government has no duty under R.C. 149.43 to just give information"). Thus, "information" is not the equivalent of a "record" as used in the Public Records Act.

{¶17} Public offices and the courts have a duty to apply and enforce statutes as they are written, without adding to, subtracting from, or modifying their provisions.

> "[T]he General Assembly, in enacting a statute, is assumed to have been aware of other statutory provisions concerning the subject matter of the enactment even if they are found in separate sections of the Code." And the General Assembly's use of particular language to modify one part of a statute but not another part demonstrates that the General Assembly knows how to make that modification and has chosen not to make that modification in the latter part of the statute. Finally, we have held that if the General Assembly could have used a particular word in a statute but did not, we will not add that word by judicial fiat.

(Citations omitted.) *Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 142 Ohio St.3d 236, 2014-Ohio-5511, 29 N.E.3d 903, ¶ 26. *See also Carter v. Reese*, 148 Ohio St.3d 226,

235, 2016-Ohio-5569, 70 N.E.3d 478, ¶ 25 (General Assembly knows how to codify the scope of a statute). The court may not "add to, enlarge, supply, expand, extend or improve the provisions of the statute to meet a situation not provided for." *State ex rel. Toledo Blade Co. v. Univ. of Toledo Foundation*, 65 Ohio St.3d 258, 265, 602 N.E.2d 1159 (1992). "Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." R.C. 1.42.

{¶18} As noted above, the word "record" has a technical and particular meaning for the purposes of R.C. Chapter 149, which is cross-referenced in R.C. 187.04(C) as the context in which the exemption is provided. Related definitions of "record" in the Revised Code are likewise limited to a fixed medium. For instance, "record" is defined for the Uniform Electronic Legal Material Act as:

> "Record" means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form.

R.C. 149.21(A)(5). *See also* R.C. 1306.01(M) (language identical to R.C. 149.21(A)(5) used in definition of "electronic record;" R.C. 1306.01(G)); and numerous repetitions of this definition throughout the Revised Code. These definitions conform with the common usage of the word "record" in an office as "[a] thing constituting a piece of evidence about the past, especially an account kept in writing or some other permanent form."[9] Likewise, Ohio records retention law addresses the retention and disposal of records as corporeal, identifiable materials, not as abstract information. See R.C. 149.33 through 149.42. In all definitions used in Ohio public records law, information is not a record until it is fixed on some medium from which it is retrievable in perceivable form.

{¶19} In crafting exceptions to the Public Records Act, the General Assembly regularly distinguishes between those that apply only to records, and those that apply more broadly to information, recorded or not. Statutes restricting information prohibit

---

[9] Oxford Living Dictionary, https://en.oxforddictionaries.com/definition/record (accessed Feb. 11, 2019).

oral dissemination in addition to release of the information as contained in a record. *See e.g.*, R.C. 149.43(A)(1)(e), (i), (p), (q), (r), (w), (x), (aa), (cc), (dd), (ee), (gg), and (hh); R.C. 149.43(A)(7); R.C. 149.436; R.C. 149.45(C); and R.C. Chapter 1347. A pertinent example is the Uniform Trade Secret Act, where "trade secret" is defined as:

> *information*, including the whole or any portion or phase of any scientific or technical *information*, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial *information*, or listing of names, addresses, or telephone numbers, that [has economic value and has been kept secret].

R.C. 1333.61(D). Similarly, "[p]roprietary *information* of or relating to any person that is submitted to or compiled by the Ohio venture capital authority created under section 150.01 of the Revised Code" is exempt from disclosure. R.C. 149.43(A)(1)(w). In contrast, the reference to R.C. 187.04(C) in R.C. 149.43(A)(1)(bb) repeats that statute's exemption of only "records," not "information." R.C. 187.04(B) uses the term "record" throughout, and provides no sanction for disclosure of JobsOhio *information*. *Compare* R.C. 1347.10(A)(2) (civil remedy); R.C. 109.57(D)(1)(b) and R.C. 2913.04(D) (criminal sanction). Notably, Chapter 187 elsewhere distinguishes information content and the physical document containing it by providing that certain "*information* in R.C. 187.04(C)(1) * * * shall not be included in the *report*." R.C. 187.03(B)(3). The General Assembly could have, but did not, restrict the dissemination or re-dissemination of JobsOhio *information* by R.C. 187.04(C)(1).

{¶20} The General Assembly also knows how to limit the re-disclosure of information from third parties who receive it. For example, R.C. 109.57(C)(5) and (D)(1) (certain information gathered by the bureau of criminal identification and investigation) and R.C. 4501.27(A) (personal information obtained in connection with motor vehicle record) continue the exemption of protected information when it is obtained by another agency or person. *See* R.C. 109.57(H); R.C. 4501.27(C). Within these statutes, the terms "information" and "record" are applied in conformity with their distinct definitions.

The removal of JobsOhio *records* from the definition of public records "regardless of who may have custody of the *records*" does not limit re-disclosure of *information*.

{¶21} The evidence shows that the bid document contains only one JobsOhio record. JobsOhio created the document, containing information as to the types and amounts of financial incentives to be offered to Amazon.com. (Deptola Aff. at ¶ 2-3.) JobsOhio provided this document to a private corporation, Team Northeast Ohio (Team NEO), for use in preparing the bid document for a regional partnership that included Cleveland. (Ebersole Aff. at ¶ 10; Deptola Aff. at ¶ 3-4; Sept. 26, 2018 Kretch Aff. at ¶ 4-8.) Team NEO attached the JobsOhio record to the appendix, but also chose to distribute pieces of information from the JobsOhio record elsewhere in the bid document text.[10] I find that the letter with attachments at bid document Bates No. pages 90-95 is a record created by JobsOhio that may be withheld pursuant to R.C. 187.04(C)(1). I find that Cleveland fails to meet its burden of proof to show that any other portion of its bid document is exempt as a "JobsOhio record."

**Waiver**

{¶22} Buduson argues that Cleveland waived the statutory exception for any JobsOhio records by "[giving] those documents to Amazon with no restrictions on their use." (Second Reply at 2.) "Moreover, the JobsOhio Records were also provided to another of JobsOhio's regional network partners, Columbus 2020, for inclusion in and as part of Columbus's confidential bid response for HQ2." (Deptola Aff. at ¶ 6.) However, Buduson does not provide any evidence that Amazon or Columbus 2020 has further disclosed the presumably identical six-page letters. I find that the language of the exception, applying "regardless of who may have custody of the records" means that

---

[10] The portions of the bid document that Cleveland describes as JobsOhio records include more than specific financial incentive amounts and terms. In numbered portions 1, 6, 7, and 8 (Third Supp. Response at 2-3), the text surrounding the dollar amounts and temporal terms includes labels, introductory and transitional phrases, general descriptions of grant usage, web site links, aspirations, predictions, and promotional language. Even were the incentive amounts and terms exempt, the surrounding non-exempt material would be subject to disclosure. *See* R.C. 149.43(B)(1); *Besser I* at 541.

waiver has not occurred simply because a verbatim copy of the original record is in the custody of a private corporation or another public office. To be sure, the exception is only discretionary, meaning that either JobsOhio, Columbus 2020, the public office team partners, and any private entity having custody of the records, may disclose the records without violating the statute.[11] The General Assembly merely precludes use of the Public Records Act to *compel* disclosure of the record.

### Ohio Uniform Trade Secrets Act

**{¶23}** "A public office's own trade secret, in its possession, is a record the release of which is prohibited by state or federal law." *State ex rel. Luken v. Corp. for Findlay Mkt. of Cincinnati*, 135 Ohio St.3d 416, 420, 2015-Ohio-1532, 988 N.E.2d 546, ¶ 17. *See State ex rel. Perrea v. Cincinnati Pub. Sch.*, 123 Ohio St.3d. 410, 2009-Ohio-4762, 916 N.E.2d 1049, ¶ 19. Cleveland claims that portions of the bid document are its trade secrets. (Third Supp. Response at 4-6.)

**{¶24}** An *in camera* inspection is usually necessary to determine the merits of a trade secret claim. *State ex rel. Besser v. Ohio State Univ.*, 87 Ohio St.3d 535, 541-542, 721 N.E.2d 1044 (2000) ("*Besser I*"). Accordingly, the special master ordered Cleveland to file the unredacted bid document under seal, and state with specificity what parts Cleveland believes are trade secrets. Cleveland filed the unredacted document and claimed 24 items as trade secret. (Third Supp. Response at 4-6.) All 24 items concern the same type of information—the amount, duration, and estimated value of financial incentives that Cleveland offered Amazon to locate HQ2 in Cleveland.

The Ohio Uniform Trade Secrets Act defines "trade secret" as:

information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any

---

[11] *See* 2000 Ohio Op.Atty.Gen. No. 021 ("R.C. 149.43 does not expressly prohibit the disclosure of items that are excluded from the definition of public records, but merely provides that their disclosure is not mandated.")

business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

R.C. 1333.61(D). "An entity claiming trade secret status bears the burden to identify and demonstrate that the material is included in categories of protected information under the statute and additionally must take some active steps to maintain its secrecy." *Besser II,* 89 Ohio St.3d 396, 400, 732 N.E.2d 373 (2000). Cleveland asserts that the withheld material is financial information that derives independent economic value from not being generally known, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. (Supp. Response at 6-8.) To meet its burden, Cleveland must provide more than conclusory statements in affidavits to show which, if any, information is a "trade secret." *Besser II* at 400-404. *Accord Harris v. Belvoir Energy, Inc.*, 8th Dist. Cuyahoga No. 103460, 2017-Ohio-2851, ¶ 16; *Arnos v. MedCorp, Inc.*, 6th Dist. Lucas No. L-09-1248, 2010-Ohio-1883, ¶ 28.

The following factors are used in trade secret analysis:

(1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Besser II* at 399-400. Considering the evidence in light of the *Besser* factors, I find that Cleveland has not proven that any of the claimed information fits squarely within the trade secret exception.

**Application of *Besser* Factors To The Bid Document**

**(1) The extent to which the information is known outside the business.**

{¶25} Several parties have direct knowledge of the financial incentive information in the Amazon HQ2 bid. Most apparent is Amazon, the recipient of the bid. The information was also disclosed to the partner entities that worked on the HQ2 proposal, including Team NEO, JobsOhio, Greater Cleveland Partnership, Northeastern Ohio Area Coordinating Agency, Cuyahoga County, the consulting firm Dix & Eaton, and the Downtown Cleveland Alliance. (Ebersole Aff. at ¶ 6, 10.)

**(2) The extent to which it is known to those inside the business, i.e., by the employees.**

{¶26} Cleveland attests that seven city employees had knowledge of the financial incentive information. (Ebersole Aff. at ¶ 11-12; Third Supp. Response at 10.) Cleveland avers that those seven employees used hard copies only, and prohibited other Cleveland employees from accessing the information. (Ebersole Aff. at ¶ 12.)

**(3) The precautions taken by the holder of the trade secret to guard the secrecy of the information.**

{¶27} While trade secret is not waived by inclusion in an application or proposal, *State ex rel. Seballos v. School Emp. Retirement Sys.*, 70 Ohio St.3d 667, 671, 640 N.E.2d 829 (1994), neither does the bidding process enable blanket assertion of trade secret. "A business or possessor of a potential trade secret must take some active steps to maintain its secrecy in order to enjoy presumptive trade secret status." *State ex rel. Plain Dealer v. Ohio Dep't of Insurance*, 80 Ohio St.3d 513, 525, 687 N.E.2d 661 (1997). "[T]he holder of a trade secret is protected against disclosure or unauthorized use of the trade secrets by those to whom it has been confided *on the condition that the secret not be disclosed.*" (Emphasis added.) *R&R Plastics v. F.E. Meyers Co.*, 92 Ohio

App.3d 789, 802, 637 N.E.2d 232 (6th Dist.1993). Cleveland took no discernable steps to guard against disclosure by Amazon, and Cleveland does not point to any legal restriction on Amazon from disclosing any or all of the bid document.[12]

{¶28} Although Cleveland required the seven employees who worked with the incentive information to use only hard copies, Cleveland provides no further detail of efforts it undertook to ensure that employees maintained the secrecy of the information. "There is no presumption that any particular idea imparted to or acquired by an employee is a trade secret unless the possessor takes active steps to maintain its secrecy." *Hoffman-La Roche Inc. v. Yoder*, 950 F.Supp. 1348, 1360 (S.D.Ohio 1997), citing *Water Management, Inc. v. Stayanchi*, 15 Ohio St.3d 83, 85-86, 472 N.E.2d 715 (1984). An entity claiming trade secret protections must demonstrate that it undertook reasonable security measures to protect information known to employees. *Hoffman-La Roche* at 1361. Such efforts may include written or oral confidentiality agreements, facial marking indicating confidentiality, internal or external controls on physical access to information, and policies for retrieval or collection of disseminated documents. *Id.* at 1361-1364.

{¶29} Further, a party claiming trade secret protection must take reasonable steps to prevent disclosure by other parties with access to the information. *See Jedson Eng'g, Inc. v. Spirit Constr. Servs.*, 720 F.Supp.2d 904, 922 (S.D.Ohio 2010) (subcontractor was not entitled to trade secret protection for drawings given to a general contractor where there was no evidence the subcontractor took active steps to maintain the secrecy of its drawings vis-à-vis third parties); *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 273-74 (6th Cir.2010) (software developer did nothing to prevent customers from allowing third parties to view its software interface); *In re Alternative Energy Rider Contained in the Tariffs of Ohio Edison Co.*, 153 Ohio St.3d 289, 2018-

---

[12] In any case, "an agreement of confidentiality, standing alone, cannot support a trade secret claim." *State ex rel. Plain Dealer v. Ohio Dept. of Ins.*, 80 Ohio St.3d 513, 527, 687 N.E.2d 661 (1997).

Ohio-229, 106 N.E.3d 1, ¶ 40-43 (utility company took reasonable steps to maintain secrecy of supplier and bid information where it entered into protective agreements with suppliers and other parties with access to the information). "[A]n owner's disclosure to potential or actual customers, absent a confidential agreement or understanding, will destroy any protection of that information as a trade secret." *R & R Plastics v. F.E. Myers Co.*, 92 Ohio App.3d 789, 802, 637 N.E.2d 332 (6th Dist.1993). In this case, Cleveland provides no evidence that its potential customer—Amazon—agreed or understood that the financial incentive information in the HQ2 bid was to remain confidential. Nor has it shown that it took any steps to prevent disclosure of the incentive information by its partner entities.  Under the circumstances, Cleveland has not shown comprehensive efforts to maintain secrecy of the information.

**(4) The savings effected and the value to the holder in having the information as against competitors.**

{¶30} Cleveland makes no effort to quantify the savings effected and the value to it in having the information as against competitors. Cleveland attests only that disclosure of the financial incentive information will hamper Cleveland's competitiveness in future negotiations "of this scale" by allowing competitor cities insight into Cleveland's evaluation and negotiation process. (Ebersole Aff. at ¶ 14.) However, records that detail strategy, planning, bids and negotiations do not automatically qualify as trade secrets, particularly where, as here, the attempted transaction has failed. *Plain Dealer,* 80 Ohio St.3d 513, 526, 687 N.E.2d 661 (1997).

{¶31} Cleveland does not support its conclusory statement of future use or value with any specific, credible evidence. The tax and other incentive information that Cleveland withholds does not itself describe evaluative methodologies or negotiation processes. It concerns only the particular incentive terms in estimated dollar value, percentages, and length of time, that Cleveland offered to Amazon. With respect to future utility, Cleveland acknowledges that these terms were specific to the Amazon

HQ2 bid. (Ebersole Aff. at ¶ 15, Third Supp. Response at 11.)  Generally, Ohio courts have found that information specific to a completed process does not retain independent economic value under the Ohio Uniform Trade Secrets Act unless the entity claiming trade secret protection offers specific evidence that the information would still be beneficial to competitors. *See Besser II* at 403; *Plain Dealer*, *supra*, at 526; *In re Alternative Energy Rider Contained in the Tariffs of Ohio Edison Co.*, 153 Ohio St.3d 289, 2018-Ohio-229, 106 N.E.3d 1, ¶ 36.

{¶32} With respect to Cleveland's "evaluation and negotiation" style, the Supreme Court in *Besser II* found that a public office's business plan, staffing contract, profit/loss analysis, acquisition goal summaries, working assumptions for operations, notes and research on comparable hospitals, draft asset purchase agreement, and pro forma for acquisition of a hospital were not proven to be trade secret. *Besser II* at 399-406. The court rejected OSU's argument that if it entered into future negotiations similar to the failed transaction, opposing parties could use these bid details "to determine OSU's valuation process, negotiating style, and internal processes for making and receiving offers, and that competitors can use this information even now to attack, undermine, and circumvent OSU's business strategies," finding that OSU had provided no factual evidence to support its conclusory statements and arguments. *Besser II* at 401-402. Cleveland provides no evidence to show that the specific local financial incentive terms offered to Amazon will have any value in future bids or negotiations. Cleveland cannot affirm that a future administration will offer identical terms to a different corporation, even in the unlikely event that market conditions remain static. *See In re Alternative Energy Rider* at ¶ 34, 36 (considering changes in market conditions when evaluating the continuing economic value of information). Cleveland has provided no factual evidence that its local financial incentives here were so unique, compelling, or otherwise valuable that competitors would gain a cognizable economic benefit from their disclosure in the immediate future. Moreover, the circumstances for future bids will be different, and

keeping the financial incentives from the HQ2 bid a secret will not necessarily benefit future bids. *Besser II, supra. See Sheil v. Horton*, Ct. of Cl. 2017-00772PQ, 2018-Ohio-1720, ¶ 51-52 (respondent does not explain how disclosure of the financial incentive offered to one speaker would affect negotiations with future speakers who have different and unique values). Cleveland agrees that the structure of these financial incentives were crafted for a unique, ephemeral situation: "The financial incentives offered in relation to the RFP from Amazon, Inc. were specifically designed for the proposed transaction." (Supp. Response at ¶ 9-10; Ebersole Aff. at ¶ 14.) *See Plain Dealer, supra*, at 526.

{¶33} Therefore, Cleveland fails to demonstrate that its 2017 financial incentives offered to Amazon have any significant or persisting value as against Cleveland's competitors in future transactions.

**(5) The amount of effort or money expended in obtaining and developing the information.**

{¶34} Cleveland attests that Director of Economic Development David Ebersole spent 10-15 hours reviewing available information and developing the incentives for the Amazon HQ2 bid. (Ebersole Aff. at ¶ 13.) Ebersole also spent an unspecified number of hours meeting with other Cleveland employees "with knowledge about the financial incentives." *Id.* Ebersole was acting as Cleveland's Interim Director of Economic Development when he worked on the Amazon HQ2 bid, and the work was part of his existing job duties. (*Id.* at ¶ 2, 4, 9, 13.) Cleveland has not shown that it expended a significant amount of money or effort in developing the incentive information.

**(6) The amount of time and expense it would take for others to acquire and duplicate the information.**

{¶35} The mere fact that obtaining information may take some effort does not make the information a trade secret. *Brakefire, Inc. v. Oberveck*, 144 Ohio Misc.2d 35, 2007-Ohio-6464, 878 N.E.2d 84, ¶ 33 (C.P.) Although Cleveland "believes it would take significant time and expense for others to duplicate the City's information," it makes no

attempt to quantify this assertion. (Third Supp. Response at 11.) Cleveland argues that the local financial incentives were unique and specifically tailored to the Amazon HQ2 bid. (Ebersole Aff. at ¶ 14; Third Supp. Response at 11.) Although this supports the assertion that replicating the information would require some time or expense, it again raises questions about the value of such information. Both Cleveland and future competitors will rely on different, updated information for future bids. Emphasis on relevant attributes, and incentives offered, will vary with the preferences of each business courted, and of each suitor.

**The Besser Factors Do Not Support a Finding of Trade Secret in This Case**

{¶36} Cleveland relies only on speculative and conclusory statements regarding the economic value of keeping the bid information secret from the public: "[T]he structure of financial incentives and their terms could very well be used to attract businesses of Amazon, Inc.'s ilk in the future." (Supp. Response at 7.) Notably lacking is any factual evidence or expert testimony in support. Cleveland submitted no evidence of how often it has been or reasonably expects to be presented with circumstances analogous to the Amazon bid. There is no reason to believe that the terms of its future bids would remain static, even to court Amazon again, since inflation, availability of infrastructure, and costs of transportation are unlikely to remain static. Review *in camera* fails to demonstrate that future competitor cities would accomplish any significant savings of time or expense by knowing the particular financial incentives offered under the particular circumstances of the 2017 Amazon bid. Respondent has provided no persuasive evidence of how any of the information "derives independent economic value, actual or potential, from not being generally known." There is no credible evidence that the information withheld would benefit Cleveland in future transactions.

{¶37} As in a previous case finding information in this same bid document to not constitute trade secret, Cleveland has not shown that its incentives were so unique,

compelling, or otherwise valuable that competitors would gain a cognizable economic benefit from its disclosure. *Naymik v. Northeast Ohio Areawide Coordinating Agency*, Ct. of Cl. No. 2017-00919PQ, 2018-Ohio-1718, ¶ 21-23. In *In re Emily Opilo and the Morning Call v. Penn. Dept. of Comm. and Econ. Dev.*, No. AP 2018-0145, 2018 PA O.O.R.D. LEXIS 432, *20-26, a state agency released part of its Amazon HQ2 proposal but asserted trade secret for the "incentive proposal" portion, noting that it had "invested heavily in the Proposals in terms of staff time and resources." *Id.* at *20-23. The agency claimed that disclosure would harm agency "economic development initiatives to draw business to the Commonwealth by forcing them to negotiate in public." *Id* at *23. In rejecting the claim of trade secret, the Pennsylvania Office of Open Records found the various assertions of harm speculative and conclusory, and that "[m]ost importantly, the Department does not adequately address *how* other persons can obtain economic value from the Incentive Proposal's disclosure." (Emphasis sic.) *Id*.

**{¶38}** Cleveland satisfies neither of the two mandatory requirements for trade secret protection under the Ohio Uniform Trade Secrets Act. By demonstrating only minimal effort to prevent disclosure of the financial incentive information by its employees and no discernable effort to prevent disclosure by other parties, Cleveland fails to show that it took efforts reasonable under the circumstances to maintain the secrecy of the information. R.C. 1333.61(D)(2). By producing no evidence of the continuing value of the HQ2-specific incentive terms, Cleveland fails to show that the information derives independent economic value. R.C. 1333.61(D)(1). Thus, the financial incentive information is not trade secret, and is not exempt from disclosure under R.C. 149.43.

### Untimely Production

**{¶39}** A public office must provide requested copies "within a reasonable period of time." R.C. 149.43(B)(1). "Reasonable period of time" is evaluated based on the facts and circumstances of each case. *State ex rel. Shaughnessy v. Cleveland*, 149 Ohio

St.3d 612, 2016-Ohio-8447, 76 N.E.3d 1171, ¶ 8-22. The fact that an office deals with many other public records requests is not an acceptable excuse for delay. *State ex rel. Wadd v. Cleveland,* 81 Ohio St.3d 50, 53-54, 689 N.E.2d 25 (1998). The 144 days that elapsed between January 22, 2018 request and the provision of the redacted bid document on June 15, 2018 was beyond a "reasonable period of time" to provide any portion of the record. I find that the delay under the facts and circumstances in this case was a violation of R.C. 149.43(B)(1).

**Conclusion**

{¶40} Upon consideration of the pleadings and attachments, I find that only Bates No. 90-95 may be withheld from the bid document pursuant to R.C. 187.04(C)(1). I further find that respondent has failed to show that any information in the bid document constitutes a trade secret of the City of Cleveland. Accordingly, I recommend that the court ORDER respondent to provide requester with an unredacted copy of the bid document except as noted. I further recommend that Buduson be entitled to recover the amount of the filing fee and any other costs associated with the action that he has incurred. R.C. 2743.75(F)(3)(b).

{¶41} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

JEFFERY W. CLARK
Special Master

**Filed February 12, 2019**
**Sent to S.C. Reporter 3/20/19**